FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION 2018 APR 27 PM 2:56

BUILDING MANAGEMENT SYSTEMS,
INC.,

Case no.: 6:18-cv-664-ORL-18TBS

Plaintiff,

COMPLAINT

vs.

HENSEL PHELPS CONSTRUCTION CO.
and TRAVELERS SURETY AND CASUALTY
COMPANY,

Defendants.

Plaintiff sues Defendants and states:

1. This is an action for damages that exceed $75,000, exclusive of interest, costs and attorneys' fees, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as this is an action between citizens of different states.

2. Plaintiff, Building Management Systems, Inc. (BMS), is a Florida corporation, and a citizen of the state of Florida, with its principal place of business in Melbourne, Florida.

3. Defendant, Travelers Casualty & Surety Company, is a Connecticut Corporation, a citizen of Connecticut and has its principal place of business in Connecticut.

4. Defendant, Hensel Phelps Construction Company (Hensel Phelps), is organized under the laws of Delaware with its principal place of business in Colorado. It is not registered for business in Florida.

5. This action concerns construction of certain improvements on real property owned by the National Aeronautics and Space Administration

1

(NASA) subject to a land lease to Space Florida, an independent special district, a body politic and corporate, and a subdivision of the State of Florida (hereinafter referred to as "Owner" or "Space Florida"). The project is located in Titusville, Brevard County, Florida and venue lies in the Middle District of Florida.

6. All conditions precedent to this action have occurred, been actively prevented and/or waived.

## COUNT I
## BREACH OF CONTRACT – HENSEL PHELPS

7. This is an action for breach of contract against Hensel Phelps.

8. Paragraphs 1-2 and 4-6 are incorporated by reference.

9. On February 24, 2017, Hensel Phelps and BMS entered into a subcontract agreement for BMS to provide labor, materials and services for the construction of a Pre-engineered Metal Building ("PEMB") on Space Florida's property for a project known as the *Space Florida-OneWeb Spacecraft Integration Facility*, financed by Space Florida and leased to OneWeb Satellites, a joint venture equally owned by OneWeb and "Airbus Defense and Space."

10. A copy of the subcontract agreement without the voluminous incorporated "contract documents" is attached as Exhibit 1. It was based on GMP Amendment No. 1 between Hensel Phelps and the Owner, a copy of which is attached without voluminous documents, and marked as Exhibit 2.

11. Pursuant to the subcontract agreement, BMS provided labor, services and materials for the construction of the PEMB on the project site.

12. BMS had substantially completed the construction of the PEMB before January 18, 2018, Hensel Phelps had billed the Owner for same less 10% retainage, and BMS proceeded with punch-list work.

13. The roofing work performed under direct purchase order from the Owner to Kingspan required specifically identified punch-list work specified by Kingspan for issuance of its weather-tightness warranty to the Owner.

14. Kingspan informed HP that the work required was normal and customary and it would issue the warranty upon its completion, after Kingspan's final inspection.

15. Similarly, added work required on the building façade was based on an atypical design for a metal building, as requested by the Owner, and specified for performance by the PEMB manufacturer, VP Metal Buildings. The work would be performed by BMS to reach final completion of the building.

16. In addition, BMS completed 99% of the interior punch-out work.

17. Beginning with BMS' first payment application, Hensel Phelps was late in making payment due BMS. BMS repeatedly demanded payment in accordance with the subcontract agreement. Any pay-when-paid provision was rendered ambiguous and unenforceable by incorporation of other contract documents in the subcontract agreement.

18. The pay application from BMS for October 2017 was not paid until January 2018, despite Hensel Phelps' receipt of payment from the Owner, in breach of the subcontract agreement.

19. The pay application BMS submitted in November 2017 remains unpaid, past due and outstanding 6-months later, although Hensel Phelps has been paid for it.

20. Hensel Phelps breached the subcontract agreement in failing to pay BMS its November draw.

21. Hensel Phelps further breached the subcontract agreement in failing to make timely payment for BMS' December 2017 pay application, which payment was only remitted March 14, 2018.

22. Hensel Phelps also breached the subcontract agreement in failing and refusing to make payment to BMS of pay applications BMS submitted in January and March, 2018.

23. Hensel Phelps committed material breaches of the subcontract agreement in paying late, failing to pay amounts owed to BMS for change order work, and failing to approve change order work – despite having demanded it.

24. Under protest based on continuous threats written by Hensel Phelps, BMS performed additional scopes of work and furnished added services for which it is owed payment.

25. On February 5, 2018, Hensel Phelps wrote to BMS and demanded it stop work on the project, specifically the performance of punch-list work on the façade and roof to complete its subcontract agreement.

26. On March 28, 2018, BMS was told by Hensel Phelps that it would not be allowed to perform any further or additional work on the project; however, when BMS wrote on March 30 to confirm the directive, it was again directed to standby and await further word

on whether it would be permitted to finish its work on the roof and façade.

27. BMS continued to wait, on standby at Hensel Phelps' demand, without payment and it was continuously precluded from performing, adjusting, punching out, and completing its scope of work.

28. Hensel Phelps demanded BMS standby from February 5 through and including April 19, 2018; and on April 19 it again completely repudiated its contract obligations and advised it would not allow BMS to complete its work on the project and would keep funds paid for BMS work and assess all costs of completion against BMS.

29. Hensel Phelps committed additional material breaches of the subcontract agreement, which states, Hensel Phelps may withhold payment "until the condition requiring such measures has been remedied by the Subcontractor to the satisfaction of Contractor. *If the offending condition is not remedied by the Subcontractor within a reasonable period of time*, the Contractor may, at its option, proceed to make application of the withheld funds in whatever manner the Contractor may determine..." (Emphasis added). Here, Hensel Phelps precluded BMS from remedying the alleged condition. Still, Hensel Phelps told BMS it is withholding its money and paying others to perform work without having permitted BMS to remedy and complete the work as expressly set forth in its subcontract agreement.

30. Pursuant to the subcontract agreement, Hensel Phelps' right to withhold funds and pay a third party or parties is conditioned upon BMS failing to remedy an alleged defect. Therefore, Hensel

Phelps doing so without affording BMS the right to perform is another material violation of the subcontract agreement.

31. Hensel Phelps' breaches excused any obligation of further performance on the part of BMS, and ripened BMS' claim for damages.

32. As a result of the acts and omissions of Hensel Phelps, BMS has suffered and continues to accrue damages consisting of
   a. Unpaid amounts due under the subcontract agreement;
   b. Unbudgeted cost of delay, acceleration, cost of standing by, increased labor and supervision costs, cost of equipment, extended general conditions, unabsorbed overhead, bond premiums and other costs and expenses;
   c. Work directed by Hensel Phelps that was not in BMS' subcontract;
   d. Subcontractor payment claims for sums that were not paid by Hensel Phelps including added work required of BMS privies; and
   e. Attorneys' and consultant fees and legal costs recoverable by contract and statute.

33. Hensel Phelps also breached its obligation of good faith and fair dealing, implied in the subcontract agreement under Florida law.

34. Hensel Phelps is liable for all damages flowing from its breaches.

WHEREFORE, BMS prays for entry of judgment against Hensel Phelps for damages, costs and attorney's fees and prejudgment interest.

## COUNT II
### PROMPT PAYMENT ACT – HENSEL PHELPS

35. This is an action against Hensel Phelps for violation of the Prompt Payment Act, section 255.0705, Florida Statutes, *et seq.*

6

36. Plaintiff repeats the allegations set forth in Paragraphs 1-2, 4-6, and 17-24 of this complaint as if fully set forth herein.

37. The following facts are verified by declaration of BMS:[1]

(a) The existence of a contract for providing such labor, services, or materials to improve real property between Hensel Phelps and BMS based on the prime contract between Hensel Phelps and the Owner.

(b) The labor, services, or materials provided consisted of a PEMB and related improvements in accordance with the subcontract agreement.

(c) The amount of the contract price as adjusted by agreement was $1,421,611.40, of which BMS has been paid $1,162,604.88, and $259,006.52 remains past due and outstanding, not including requested change orders and pending claims as described herein.

(d) According to Hensel Phelps pay application #12, dated January 31, 2018, a copy of which is attached as Exhibit 3, Hensel Phelps had billed and was paid for 91% of BMS' base contract work, to wit, $1,268,672 through Hensel Phelps pay app #11.

(e) It appears Hensel Phelps withheld at least the sum of $114,126.59 it received from the Owner for BMS work.

(f) The undisputed amounts above remained due and payable pursuant to the contract for more than 30 days after the date the labor or services were accepted or the materials were received.

---

[1] BMS's verification is attached following the signature of counsel.

7

(g) The person against whom this complaint was filed has received payment on account of the labor, services, or materials described in this complaint and, as of the date the complaint was filed, has failed to make payment within the time limitations set forth in s. 255.073(3),(4).

38. As of the filing of this Complaint, Hensel Phelps was paid at least the amount of $ $114,126.59 for the work of BMS, for which Hensel Phelps has failed to pay BMS in violation of the Prompt Payment Act.

39. BMS is also entitled to interest at 1% per month, attorneys' fees and legal costs, pursuant to section 255.071, Florida Statutes.

WHEREFORE, BMS prays for relief as follows:

- After service of this complaint, an evidentiary hearing on the complaint, upon not less than 15 days' written notice.
- An accounting of the use of any such payment from the person who received such payment.
- A temporary injunction against the person who received the payment to be issued without regard to any other remedy and whether irreparable damages will occur.
- Prejudgment attachment against the person who received the payment, in accordance with each of the requirements of Chapter 76, Florida Statutes.
- Award of damages, interest, attorneys' fees and costs and such other legal or equitable remedies as may be appropriate in accordance with the requirements of the law.

**COUNT III – PUBLIC WORKS PAYMENT BOND - § 255.05, FLA. STAT.**
**TRAVELERS**

40. This is an action pursuant to section 255.05, Florida Statutes, against Travelers, referred to as "Surety."

41. Plaintiff repeats the allegations set forth in Paragraphs 1 through 6 and 9-31 of this Complaint as if fully set forth herein.

42. On March 7, 2017, Hensel Phelps, as Principal, and Travelers as Surety, recorded and executed a Payment and Performance Bond in favor of the Space Florida, Contracting Public Entity, for the construction of BMS' scope of work on the PEMB for the Spacecraft Integration Facility project, and payment of Hensel Phelps' privies.

43. The penal sum of the Payment Bond furnished pursuant to section 255.05, Florida Statutes was three million nine hundred twenty-four thousand dollars ($3,924,000.00). A copy of the Payment Bond is attached as Exhibit 4 and incorporated by reference. A copy of other Payment Bonds issued for GMP adjustments that may include the work of BMS (Bond 3, 4, 5 and 6) are attached in an abundance of caution, and marked Composite Exhibit 5.

44. The Payment Bond is conditioned upon Hensel Phelps promptly making payments to all persons defined in section 713.01, Florida Statutes, who furnish labor, services, or materials for the prosecution of the work provided for in the Space Florida Prime Contract and it is not subject to a pay-when-paid provision under Florida law.

45. BMS is a person within the definition of section 713.01, Florida Statutes.

9

46. BMS furnished labor, services, and materials for prosecution of the work in the Space Florida Prime Contract pursuant to the subcontract agreement it signed with Hensel Phelps.

47. BMS has repeatedly submitted change orders to Surety's principal, and BMS is entitled to payment for the added work directed by it.

48. BMS properly performed the work, labor, services, and provision of materials according to the terms of its Subcontract, and the labor, services or materials were incorporated into the improvements.

49. BMS experienced repeated delays, inefficiencies, damage to its work, and direct and active interference by Hensel Phelps and its privies, including months of time when Surety's principal demanded BMS standby. Thus, it incurred unbudgeted expense which it also claims against Surety's bond.

50. BMS timely served notice of nonpayment on Surety, which has failed and refused to make payment of amounts due to it.

51. As a result of the acts and omissions of Hensel Phelps, BMS has suffered and continues to accrue damages consisting of

   a. Unpaid amounts due under the subcontract agreement;

   b. Unbudgeted cost of delay, acceleration, cost of standing by, increased labor and supervision costs, cost of equipment, extended general conditions, unabsorbed overhead, bond premiums and other costs and expenses;

   c. Work directed by Hensel Phelps that was not in BMS' subcontract;

    d. Subcontractor payment claims for sums that were not paid by Hensel Phelps including added work required of BMS privies; and

    e. Attorneys' and consultant fees and legal costs recoverable by contract and statute.

49. BMS is entitled to recover its attorneys' fees and costs, in accordance with section 255.05, Florida Statutes.

WHEREFORE, BMS prays for an award of damages, interest, attorneys' fees and costs against Surety.

### COUNT IV – CARDINAL CHANGE – HENSEL PHELPS
*(In the Alternative)*

52.    This is an action against Hensel Phelps for damages based on cardinal change.

53.    Plaintiff repeats the allegations set forth in Paragraphs 1-6, 9 and 12-31 of this Complaint as if fully set forth herein.

54.    Contrary to industry standards, industry requirements, the subcontract agreement, and the schedule which it was provided, BMS was required to perform its work on the construction of the PEMB for the Space Florida-OneWeb Spacecraft Integration Facility in a manner that was completely outside the contemplation of the parties. BMS' work was delayed, accelerated, re-sequenced, interrupted, changed, obstructed, impeded, and subject to various arbitrary and capricious extra-contractual requirements at the whim of Hensel Phelps and its privies.

55.    Among other things, BMS was demanded to obtain, create, and supply various "details" for the work as-installed under Florida Product Approvals issued by the Florida Building Commission for no good reason.

11

56. In lieu of completing its work, BMS was forced to standby and wait while Hensel Phelps and its privies held meetings, performed inapposite testing, and engaged consultants to inspect work by BMS and others working under it that was substantially complete but required adjustment and punch-list work prior to issuing manufacturer's warranties that it was agreed were forthcoming from the manufacturers, VP Metal Buildings (PEMB) and Kingspan (manufactured insulated roof).

57. The demands of Hensel Phelps and its mismanagement of the project, including an extended period during which BMS was on standby and had 2-3 men onsite that were permitted to perform only interior punch-list work, resulted in large unbudgeted expense not contemplated by the subcontract agreement change order process.

58. BMS faced a barrage of correspondence from Hensel Phelps, alternating demands for immediate performance, requests for reassurance that BMS would complete the work when it was permitted to do so, peppered with threats of supplementation that were not contemplated by the subcontract agreement's terms.

59. The final standby lasted months, during which the work of BMS was actively interfered with, its subcontract agreement was repeatedly repudiated by Hensel Phelps, and it was, in effect, wrongly terminated without an opportunity to cure or complete its work, without payment of substantial amounts past due and outstanding, or for extra-contractual costs incurred.

60. The nature of the delays was such that BMS could not take on other work while it was standing by waiting at the demand of Hensel

Phelps, and the alteration of its performance constituted a cardinal change.

61. The cardinal change was such that it left BMS unable to perform its work as contemplated by, and without adequate remedy under, the subcontract agreement.

62. As a result of the cardinal change, BMS suffered actual damages in addition to consequential damages, lost profit, delay and impact costs, unabsorbed overhead, bond premiums, damage to its bonding capacity, interest, consultants' fees, attorneys' fees and costs, for all of which Hensel Phelps is liable.

WHEREFORE, BMS prays for entry of judgment for damages, including consequential damages, prejudgment interest, attorneys' fees and costs against Hensel Phelps.

_____
Rosemary Hanna Hayes
Fla. Bar no. 549509
Carly Marie Newman
Fla. Bar no. 99419
HAYES LAW, PL
830 Lucerne Terrace
Orlando, FL 32801
rhayes@const-law.com
cnewman@const-law.com
cstone@const-law.com (paralegal)
(407) 649-9974 (Voice)
(407) 649-9379 (Fax)

**COUNSEL FOR PLAINTIFF**

VERIFICATION

    I hereby verify the facts set forth in Count II under the Prompt Payment Act.

_____
Jason Bartlett, President

    Before me appeared Jason Bartlett, President of Building Management Systems, Inc. who is <u>personally</u> known to me or produced _____ as identification, and affirmed the facts in Count II.

Nitza L. Packard
_____
NOTARY PUBLIC
My Commission Expires: April 26, 2022

```
NITZA L. PACKARD
Notary Public – State of Florida
Commission # GG 172153
My Comm. Expires Apr 26, 2022
Bonded through National Notary Assn
```

14